UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MATTHEW G. MUNTS,

Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. 2:13-CV-00203-JTR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 18, 25. Attorney Joseph M. Linehan represents Plaintiff, and Special Assistant United States Attorney Kathryn Miller represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On May 7, 2009, Plaintiff filed a Title II and a Title XVI application for disability and supplemental security income benefits, alleging disability beginning February 1, 1983. Tr. 31, 221. Later, he amended his onset date to May 7, 2009 and withdrew his Title II claim. Tr. 82-83. Plaintiff reported that he was unable to work due to bipolar disorder, ADHD, PTSD, generalized anxiety, personality disorder, and Hepatitis B, C and D. Tr. 225. Plaintiff's claim was denied initially

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

and on reconsideration, and he requested a hearing before an administrative law judge (ALJ).  Tr. 114-212.

On May 19, 2011, ALJ Moira Ausems convened a hearing.  Tr. 57-79.  At that hearing, medical expert John Nance, Ph.D., noted that Plaintiff's diagnoses and GAF scores were "all over the board" and the variance during that time period was likely attributable to Plaintiff's drug and alcohol use.  Tr. 71.  Dr. Nance recommended a psychological consultative exam because Plaintiff had recently experienced an extended period of sobriety.  Tr. 74.  The ALJ ordered Plaintiff to undergo a consultative examination, and she closed the hearing.[1]  Tr. 78.

A second hearing was convened in front of ALJ Moira Ausems on January 18, 2012.  Tr. 80-113.  At that hearing, vocational expert Thomas Polsin and Plaintiff, who was represented by counsel, testified.  Tr. 91-113.  On April 3, 2012, the ALJ issued a decision finding Plaintiff not disabled.  Tr. 31-48.  The Appeals Council declined review.  Tr. 1-4.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and thus, they are only briefly summarized here.  At the time of the second hearing, Plaintiff was 45 years old and living with his girlfriend in a friend's home.  Tr. 378.

Plaintiff reported that in the eighth grade he was expelled for fighting.  Tr. 378.  He later obtained a GED and attended one year of college.  He reported that during his childhood years, he was frequently sexually and emotionally abused by

---

[1]Plaintiff did not ultimately attend the ordered consultative exam – on the day scheduled for the first appointment, he was hospitalized, the second, he said was given the wrong date, and the third, he had car trouble that made him fifteen minutes late and the doctor would not see him.  Tr. 90.

ORDER GRANTING DEFENDANT'S MOTION . . . . - 2

family and family friends.  Tr. 378.  At age 12, he began using alcohol and marijuana.  Tr. 378.  At age 13, he ran away from home and ended up in foster care in Montana.  Tr. 378.  For the following twenty years, Plaintiff regularly used methamphetamine and cocaine, and he spent considerable time incarcerated.  Tr. 379.  He said he participated in several detox programs, the most recent in July, 2010.  Tr. 92.  Plaintiff testified that from July 2010, to January 18, 2012, he relapsed and used drugs on four occasions, for a total of three to four weeks of drug use.  Tr. 93.

Plaintiff's work history is sporadic and none of his jobs constituted substantial gainful employment.  Tr. 106.

Plaintiff testified that he has headaches, his shoulders hurt and it feels like his "rotator cuffs have failed," he has trouble lifting his arms, and he cannot lift himself out of bed.  Tr. 98-99.  He also said he cannot lift a jug of milk.  Tr. 102-103.  He said he cannot go into stores or he feels like he is being smothered.  Tr. 101.  Finally, he said he has not had mental health treatment since 2010, because he has no income and no benefits.  Tr. 103-104.

### STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one

ORDER GRANTING DEFENDANT'S MOTION . . . . - 3

rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

The Social Security Act bars payment of benefits when drug addiction and/or alcoholism (DAA) is a contributing factor material to a disability. 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J); *Sousa v. Callahan,* 143 F. 3d 1240,

ORDER GRANTING DEFENDANT'S MOTION . . . . - 4

1    1245 (9th Cir. 1998). If an ALJ finds that the claimant is not disabled, then the

2    claimant is not entitled to benefits and there is no need to determine whether

3    substance abuse is a contributing factor material to disability.

4         When the individual proves disability and there is also evidence of DAA, the

5    Commissioner must further determine whether the DAA is material to the

6    determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. Plaintiff has the

7    burden of showing that drug and alcohol addiction is not a contributing factor

8    material to disability. *Ball v. Massanari*, 254 F. 3d 817, 823 (9th Cir. 2001).

9                          **ALJ'S FINDINGS**

10         At step one of the sequential evaluation process, the ALJ found Plaintiff has

11   not engaged in substantial gainful activity since May 7, 2009, his application date.

12   Tr. 34. At step two, the ALJ found Plaintiff suffered from the severe impairments

13   of bipolar disorder, antisocial personality disorder with borderline features, and

14   methamphetamine, marijuana and alcohol abuse in reported remission. Tr. 34.

15   At step three, the ALJ found Plaintiff's impairments, including the substance abuse

16   disorders, meet sections 12.04, 12.08 and 12.09 of 20 C.F.R. Part 404, Subpart P,

17   Appendix 1 (20 C.F.R. § 416.920(d)). Tr. 40. The ALJ next found that if Plaintiff

18   stopped the substance abuse, the remaining limitations would cause more than a

19   minimal impact on the claimant's ability to perform basic work activities; therefore

20   the claimant would continue to have a severe impairment or combination of

21   impairments. Tr. 42. The ALJ concluded that if the "claimant stopped the

22   substance use, the claimant would not have an impairment or combination of

23   impairments that meets or medically equals any of the impairments listed in of 20

24   C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d))." Tr. 42.

25         The ALJ next found that if Plaintiff stopped the substance use, he would

26   have the residual functional capacity to perform a full range of work at all

27   exertional levels but with the following nonexertional limitations: "He is limited

28   to the performance of no more than SVP 3 level tasks that do not involve more

ORDER GRANTING DEFENDANT'S MOTION . . . . - 5

1  than superficial contact with coworkers and the general public." Tr. 43.  The ALJ

2  found that if Plaintiff stopped the substance use, considering his age, education,

3  work experience, and residual functional capacity, a significant number of jobs

4  exist in the national economy that he could perform, such as small parts assembler,

5  housecleaner, and hand packager.  Tr. 47.  The ALJ concluded that the substance

6  abuse disorder is a contributing factor material to the determination of disability

7  because Plaintiff would not be disabled if he stopped the substance use.  Tr. 48.

8  Because the substance use is a contributing factor material to the determination of

9  disability, the Plaintiff has not been disabled within the meaning of the Social

10  Security Act at any time from the date of the application was filed through the date

11  of the decision.  Tr. 48.

## ISSUES

12    Plaintiff contends that the ALJ erred by (1) failing to find that he had severe

13  physical impairments at step two; and (2) improperly weighing the medical

15  evidence.  ECF No. 18 at 14-19.

16  **A.    Step Two.**

17    Plaintiff contends that the record establishes that he suffered from carpal

18  tunnel syndrome, as well as neck and shoulder impairments and the ALJ erred by

19  finding these impairments not severe.  ECF No. 18 at 15-16.

20    Step-two of the administration's evaluation process requires the ALJ to

21  determine if the claimant "has a medically severe impairment or combination of

22  impairments."  *Smolen v. Chater,* 80 F.3d 1273, 1289-1290 (9th Cir. 1996); 20

23  C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996).

24    "An impairment is not severe if it does not significantly limit [the Plaintiff's]

25  physical ability to do basic work activities."  20 C.F.R. §§ 404.1520(c),

26  404.1521(a)(1991).  Basic work activities are "abilities and aptitudes necessary to

27  do most jobs," including, for example, "walking, standing, sitting, lifting, pushing,

28  pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking;

ORDER GRANTING DEFENDANT'S MOTION . . . . - 6

understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28) (*citing Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). Additionally, in order to be considered disabled, a disability must have either have lasted or be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 416.905(a).

Plaintiff contends that the ALJ erred by failing to find carpel tunnel syndrome was a severe impairment. ECF No. 18 at 15. But as Defendant points out, the records Plaintiff cites significantly pre-date his amended onset date. ECF No. 25 at 11; Tr. 304-310. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Moreover, in 2012, Plaintiff reported that his carpal tunnel release surgery gave him "great benefit" in both wrists. Tr. 1100. Plaintiff fails to cite to objective medical records that establish Plaintiff's carpal tunnel syndrome currently significantly limits his ability to perform basic work activities. Given this record, Plaintiff has failed to establish that carpal tunnel syndrome was a severe impairment during the relevant period.

Plaintiff also argues that the ALJ erred by failing to deem the symptoms in his neck and shoulder as severe impairments. ECF No. 18 at 15-16. The ALJ found that in October, 2011, Plaintiff was diagnosed with impairments to his spine: (i) at C4-5 central canal stenosis with mild flattening of the cord anteriorly with severe bilateral neural foraminal stenosis, left greater than right; (ii) at C5-6 central canal stenosis with severe right neural foraminal stenosis with crowding of the cord; (iii) at C6-7 severe degenerative disk disease with central canal stenosis and

severe right neural foraminal stenosis greater than left, with indentation of the cord.  Tr. 39.  The ALJ concluded that the impairment and symptoms of Plaintiff's cervical spondylosis had not caused Plaintiff significant vocational limitations for at least 12 consecutive months, and therefore was not deemed severe.  Tr. 39.  Also, the ALJ noted that Plaintiff's normal right shoulder x-ray did not support a diagnosis of a medically determinable severe impairment.  Tr. 40.

In arguing that these impairments were severe, Plaintiff relies upon records from an MRI from July, 2005, and an x-ray from June, 2007.  ECF No. 18 at 15.  The record from July 26, 2005 revealed mild stenosis, mild narrowing of central canal and foramen and mild facet joint osteoarthritis.  Tr. 317.  A June 13, 2007, x-ray revealed Plaintiff's elbow joint was normal, and his lumbar spine x-ray revealed a fracture that was likely from an old injury, along with degenerative endplate changes at L2.  Tr. 448.  No spondylolisthesis or spondylolysis was present in the lumbar spine, and the thoracic spine revealed mild degenerative disease.  Tr. 448-449.  As such, the records from 2005 and 2006 contradict Plaintiff's claim that he had a severe impairment related to his neck and back.  The records reveal mild degenerative changes and thus do not provide a basis for a finding of a severe impairment.  The ALJ did not err in failing to find these impairments severe at step two.

**B.    Medical Evidence.**

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinion of examining physician W. Scott Mabee, Ph.D.  ECF No. 18 at 18-19.  Plaintiff asserted that Dr. Mabee's decision was "basically in accord with all of the psychological evidence in the record," and he argued that the ALJ erred by giving more weight to the opinion from non-examining physician John Nance, Ph.D.  ECF No. 18 at 18.

On February 28, 2012, W. Scott Mabee, Ph.D., examined Plaintiff.  Tr. 1116-1126.  Dr. Mabee noted that Plaintiff was very drowsy during the first day of

ORDER GRANTING DEFENDANT'S MOTION . . . . - 8

testing, so he was asked to return.  Tr. 1123.  On the second day, he was still
drowsy, and he was observed sleeping during some portions of the test.  Tr. 1123.
On the MMSE-2, Plaintiff scored in the below average range.  His speed of
processing information was "fairly slow," which Dr. Mabee opined may have been
attributable to his drowsiness.  Tr. 1123.  He was unable to specify recent current
events, his ability to abstract information was intact, "but fairly inarticulable," and
his ability to make appropriate judgments and problem solve was fairly flexible.
Tr. 1123-1124.  Plaintiff's MMPI-2-RF score was invalid, due to over-reporting of
his psychopathology.  Tr. 1124.

Dr. Mabee diagnosed Plaintiff in part with:  bipolar disorder NOS; alcohol
dependence, amphetamine dependence, and cannabis abuse, all in "sustained
partial remission (per patient report);" and antisocial personality disorder with
borderline features.  Tr. 1124.  Dr. Mabee assessed Plaintiff with a GAF of 49.  Tr.
1124.  Dr. Mabee noted that Plaintiff's reports regarding his abstinence from drug
use was contradicted by hospital records.  Tr. 1124-1125.

Dr. Mabee concluded that cognitively, Plaintiff was able to remember work-
like procedures, and was able to understand, remember and carry out very short
and simple instructions.  Tr. 1125.  He can maintain attention and concentration for
only a few minutes at a time, and he has problems with time management and
focusing on tasks, maintaining a regular schedule and regular attendance.  Tr.
1125.  Dr. Mabee also opined that Plaintiff would be easily distracted by other
workers, would have trouble making work-related decisions, will likely be
sensitive to criticism, and "since he tends to be unreliable in his everyday life,
completing a normal workday, workweek, or performing at a consistent pace
should not be expected."  Tr. 1125.

Dr. Mabee completed a Medical Source Statement assessing Plaintiff's
functional limitations in his ability to perform mental work tasks.  Tr. 1129-1130.
Dr. Mabee assessed Plaintiff with ten marked impairments in the abilities to: (i)

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

understand and remember detailed instructions; (ii) carry out detailed instructions; (iii) perform activities within a schedule, maintain regular attendance, and be punctual; (iv) sustain an ordinary routine without special supervision; (v) work with or near others without being distracted by them; (vi) complete a normal workday or workweek; (vii) perform at a consistent pace; (viii) interact appropriately with the public; (ix) maintain socially appropriate behavior; and (x) set realistic goals or make plans independently of others. Tr. 1129-1130. Dr. Mabee also assessed Plaintiff with multiple moderate impairments in his work related abilities. Tr. 1129-1130.

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An examining physician's opinion is generally entitled to more weight than a non-examining physician's opinion. *Id*. Where an examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-831.

The ALJ gave little weight to Dr. Mabee's opinions regarding Plaintiff's limitations. Tr. 46. The ALJ concluded that Dr. Mabee's opinions were not supported by Plaintiff's "grossly normal mental status examination and are inconsistent with the claimant's own reported levels of functioning." Tr. 46. The ALJ also found that Dr. Mabee's opinions were based primarily upon Plaintiff's subjective complaints of symptoms, and Plaintiff had little credibility. *Id*. Finally, the ALJ noted that it is impossible to accurately assess Plaintiff's functioning without reliable information about Plaintiff's continuing substance use. Tr. 46.

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

1    Plaintiff's primary argument is that Dr. Mabee's decision was "basically in

2    accord with all of the psychological evidence in the record."  ECF No. 18 at 18.

3    Plaintiff fails to provide citation to medical opinions or provide meaningful

4    analysis.  The Court ordinarily will not consider matters on appeal that are not

5    specifically and distinctly argued in an appellant's opening brief.  *See Carmickle v.*

6    *Com'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  Plaintiff's

7    briefing is insufficient, and even if the issue was properly raised, the argument

8    fails.

9    On review, Dr. Mabee's opinion was contradicted by other medical

10   providers.  For example, on February 28, 2012, Dr. Mabee opined that Plaintiff

11   "should not be expected to understand, remember, and carry out very short and

12   simple instructions," and can "only maintain attention and concentration for a few

13   minutes at a time."  Tr. 1125.  By contrast, in 2005, John F. McRae, Ph.D., found

14   Plaintiff had only mild difficulties in understanding, remembering and following

15   complex instructions.  Tr. 290.  Similarly, in 2005, Kayleem Islam-Zwart, Ph.D.,

16   found Plaintiff had no difficulties in understanding, remembering and following

17   complex instructions.  Tr. 297.  Also, in 2007, Thomas Genthe, Ph.D., assessed

18   Plaintiff with mild and moderate limitations in all categories of cognitive

19   functioning, and in 2008, Ger K. Moua, Ph.D., assessed Plaintiff with no cognitive

20   limitations, save a single moderate limitation in the ability to exercise judgment

21   and make decisions.  Tr. 345, 376.

22   Plaintiff's contention that the ALJ erred by giving insufficient weight to Dr.

23   Mabee's opinion is not persuasive.  The ALJ's reasons for rejecting Dr. Mabee's

24   limitations were specific, legitimate and supported by substantial evidence.

25   Finally, Plaintiff alleges that the ALJ failed to give specific and legitimate

26   reasons for rejecting the opinions of several medical providers, but Plaintiff's

27   entire argument related to other medical sources is little more than:  "In this case,

28   [Plaintiff] does not believe the ALJ provided specific and legitimate reasons

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

supported by substantial evidence in the record for rejecting the numerous evaluations completed by Drs. McRae, Islam-Zwart, Dalley, Genthe and Rosekrans." ECF No. 18 at 19.

As noted earlier, the Court does not consider matters that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. Because Plaintiff failed to provide specific argument, consisting of citation to the record and relevant legal authority, and Plaintiff failed to explain or set forth with specificity how and why the ALJ erred in analyzing these provider's opinions, the Court will not review this issue.[2]

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, the Court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS HEREBY ORDERED**:

///

---

[2]If Plaintiff had properly raised the argument, it would not have been successful. In 2005, while Dr. McRae found Plaintiff had several marked impairments, he opined that Plaintiff could work. Tr. 288-294. In 2005, Dr. Islam-Zwart opined that Plaintiff could work, and his impairments should be expected to last between three and six months, and thus did not meet the threshold for duration requirement. Tr. 295-303. In 2006, Brooke Sjostrom, M.S., LMHC and Mallon Dalley, Ph.D., found Plaintiff's impairments were expected to last only three months and the impairments were likely caused by past or present substance abuse. Tr. 334-336. In 2007, Thomas Genthe, M.D., found that Plaintiff's impairments would be expected to last between six and twelve months, and thus did not meet the duration threshold. Tr. 344-347. In 2008, Ger K. Moua, Ph.D., opined that Plaintiff had only moderate impairments that could be expected to last between six and twelve months. Tr. 374-382.

1.   Defendant's Motion for Summary Judgment, **ECF No. 25**, is **GRANTED**.

2.   Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED August 29, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 13